UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE MARKHAM GROUP, INC., P.S., MARK KAMITOMO, and RACHEL NAIDU, Individually and as Personal Representation of the ESTATE of JAMES L. OVERCASH,<br><br>Defendants. | NO. CV-08-221-RHW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendants The Markham Group, Inc. P.S., and Mark Kamitomo's Motion for Summary Judgment (Ct. Rec. 24). A hearing on the motion was held on June 11 and 15, 2009. Plaintiff was represented by Stephen Haskell. Defendants were represented by James King, George Manos, and Richard Kilpatrick.

**BACKGROUND**

Plaintiff Westpoint Insurance Corporation, a legal malpractice insurance company, filed a declaratory action seeking to have this Court declare that it does not have a duty to defend or indemnify the Markam Group, Inc., P.S. and Mark Kamitomo in connection with an alleged legal malpractice claim of Rachel Naidu, individually, and as Personal Representative of the Estate of James L. Overcash.

Defendant Kamitomo has been continuously insured under a professional

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1**

liability policy issued by Plaintiff, or its predecessor in interest, since 1996,[1] under a claims-made policy that had been renewed yearly.[2] Mr. Kamitomo applied for coverage for 2007-2008 on April 3, 2007. In the application, Mr. Kamitomo indicated that he was not aware of any fact or circumstance, act, error, omission or personal injury which might be expected to be the basis of a claim or suit for lawyers. Westport issued the police effective from July 1, 2007, to July 1, 2008, on a claims made and reported basis to The Markam Group, Inc., P.S.

On January 24, 2008, Mr. Kamitomo notified Westport of a potential malpractice claim from Rachel Naidu. Prior to this date, Mr. Kamitomo represented Ms. Naidu in a wrongful death action resulting from an accident that occurred at Des Moines Vista Assisted Living, Inc. ("Vista") that ultimately resulted in her father's death. The lawsuit was dismissed on August 4, 2006, after the trial court granted Vista's motion for summary judgment. The trial court also awarded Rule 11 sanctions. Kamitomo filed an appeal. On December 31, 2007, the Washington Court of Appeals affirmed the lower court's orders, including the award of attorney's fees. The court found that the appeal was frivolous and awarded attorney's fees to Vista and against Naidu and her attorneys as a sanction.

After the Court of Appeals issued its order and after Kamitomo and Schumm conferred with an appellate specialist regarding the probability of obtaining discretionary review and were advised that it was unlikely that review would be granted, Kamitomo notified Naidu that she possibly could have a claim of legal malpractice against him. On January 24, 2008, Kamitomo notified Westport of a

---

[1] Kamitomo's last policy with Westport commenced July 1, 2007 and extended through July 1, 2009. The policy was not renewed with Westport at that time because Westport ceased writing business in the state of Washington.

[2] "Claims made" is a type of policy that provides coverage to the insured for claims which the insured first becomes aware of during the policy period.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2**

potential malpractice claim from Rachel Naidu.

## DISCUSSION

**A.  Summary Judgment**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial. *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**B.  Interpreting Insurance Policies under Washington Law**

State law is used to interpret insurance contracts. *Commercial Union Ins, Co. v. Sponholz*, 866 F.2d 1162, 1163 n.2 (9th Cir. 1989). Under Washington law, the rules for interpreting an insurance contract are well-settled. *Conrad v. Ace*

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3**

*Property & Cas. Ins. Co.*, 532 F.3d 1000, 1005 (9th Cir. 2008); *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash.2d 165, 171 (2005). Interpretation of an insurance contract is a question of law and the "policy is construed as a whole with the court giving force and effect to each clause in the policy." *Am. Star Ins. Co. v. Grice*, 121 Wash.2d 869, 874 (1993). The court should "give it a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Quadrant Corp.*, 154 Wash.2d. at 171 (internal quotation marks omitted). If the language is clear and unambiguous, the court will enforce the contract as written and may not create ambiguity where none exists. *Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co.*, 134 Wash.2d 413, 428 (1998).

If, on the other hand, the clause is ambiguous, meaning that "on its face, it is fairly susceptible to two different interpretations, both of which are reasonable," the court may rely upon extrinsic evidence of the intent of the parties to resolve the ambiguity. *Id.* Ambiguities which remain after a consideration of extrinsic evidence are resolved against the insurer-drafter and in favor of the insured. *Quadrant Corp.*, 154 Wash.2d at 172. Specifically, if the "exclusionary language is ambiguous, it is proper to construe the effect of such language against the drafter." *Lynott v. National Union Fire Insur. Co.*, 123 Wash. 2d 678, 690 (1994) (citations omitted). "Thus, if an insurance policy's exclusionary language is ambiguous, the legal effect of such ambiguity is to find the exclusionary language ineffective." *Id.* Additionally, "[e]xclusions of coverage will not be extended beyond their 'clear and unequivocal' meaning." *Id.*

"Because the purpose of insurance is to insure, exclusionary clauses are construed against the insurer with special strictness." *Tewell, Thorpe, & Findlay, Inc. v. Continental Casualty Co.*, 62 Wash. App. 571, 575 (1992).

**C.    The Insurance Policy**

  **A.    The Insurance Policy**

  The Westport policy at issue states:

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4**

1.  INSURING AGREEMENTS

A.  The Company shall pay on behalf of an INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against an INSURED during the POLICY PERIOD and reported to the company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

**(1) The Exclusion Provision**

The Westport policy in question contains the following Exclusion provision:

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

B.  Any act, error, omission, circumstance, or PERSONAL INJURY occurring prior to the effective date of the POLICY if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance, or PERSONAL INJURY might be the basis of the CLAIM.

**(2) Definitions**

The term "claim" is defined as follows:

A.  "CLAIM" MEANS a demand upon any INSURED for LOSS, as defined in each of the attached COVERAGE UNITS, including, but not limited to, service of suit or institution or arbitration proceedings or admin. proceedings against any INSURED.

Additionally, the policy includes the following definition:

E.  "POTENTIAL CLAIM" WHENEVER USED IN THIS COVERAGE UNIT MEANS:

1.  Any act, error, omission, circumstance, or PERSONAL INJURY which might reasonable be expected to give rise to a CLAIM against any INSURED under the POLICY; or

2.  Any breach of duty to a client or third party which has not resulted in an CLAIM against any INSURED.

The term "LOSS" is defined as "monetary and compensatory portion[s] of any judgment, award or settlement."

**(3)    Reporting Requirement**

Additionally, there is a reporting requirement in the Westport policy:

> As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after the termination of the POLICY PERIOD, provide written notice to the company.
>
> If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIMS and gives written notice of such POTENTIAL CLAIMS to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising form the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD.

Plaintiff Westport brought this lawsuit because it contends that prior to July 1, 2007, the effective date of the policy, Kamitomo could have reasonably foreseen that Naidu might assert a legal malpractice claim in light of the dismissal of her lawsuit, with prejudice, on August 4, 2006. Specifically, Westport asserts that when the trial court dismissed the *Naidu* action, this was sufficient notice to Kamitomo of a potential claim and that Kamitomo could have reasonably foreseen

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6**

that Naidu might assert a legal malpractice claim against him arising out of the dismissal of her lawsuit. Therefore, under the exclusionary provision, it does not have a duty to defend or indemnify.[3]

**D.      Whether the Exclusionary Clause is Ambiguous**

Defendants argue that the exclusionary clause is ambiguous. The Court agrees. It is true that the majority of the cases that have looked at this provision, or one strikingly similar have held the exclusionary clause to be unambiguous. However, under the specific circumstances of this case, the Court finds that the clause is vague and ambiguous. Specifically, in this case, the term "might" is ambiguous because it does not clearly indicate when a claim might be excluded. Here, there are potentially eight triggering events that would seemingly indicate that an act, error, or omission, committed by Mr. Kamitomo might be the basis for a claim.

- On January 6, 2006, two months after Kamitomo filed the Naidu Complaint, Defendant Vista, Inc's informed him that the assisted living facility was sold to Baltic Properties, Inc. on November 26, 2002, seven months prior to the accident;
- On March 8, 2006, Vista, Inc. filed an answer denying that it was the owner, operator or licensee of the facility at the time of the accident;
- On March 24, 2006, Kamitomo filed a motion for default based on his mistaken belief that Baltic Properties, Inc. was named as a defendant;
- On June 9, 2004, Kamitomo received a letter from Vista, Inc.'s attorney enclosing documents showing that the facility had been sold to Baltic Properties, Inc. in November 2002, and once again requesting dismissal;
- On July 6, 2004, Vista, Inc., filed a motion for summary judgment

---

[3]Westport has agreed to defend, under a reservation of rights.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7**

supported with an affidavit from the president of Vista, Inc. that Vista, Inc. was never the operator of the facility; that the owner of the facility under November 26, 2002, was Des Moines Retirement Center, LLC; and that on that date, Des Moines Retirement Center, LLC sold the real property, personal property and business operation of the facility to Baltic Properties, Inc.;

- On August 4, 2006, the court granted summary judgment to Vista, Inc., noting in its order that if Naidu's attorneys "had made a reasonable inquiry as to the actual operator of . . . [the facility], he would have determined that the licensed operator on the date of the alleged negligent acts was not the named Defendant but another party";

- On October 3, 2006, the court denied Naidu's motion for reconsideration and for leave to file an amended complaint;

- On December 31, 2007, the Washington Court of Appeals, Division I, issued an opinion affirming the trial court's dismissal.

Plaintiff argues that the triggering event occurred on August 4, 2006, when the trial court granted summary judgment. But, there is no rational basis, at least, from the language of the policy, to pick August 4, 2006 as the triggering event. If the word "might" means when a person is first put on notice of a potential claim, then the triggering event, in this case, would be the March 8, 2006 answer, or even the January 6, 2006 letter written by Vista's counsel because these documents contained the information that ultimately caused the defendant to prevail. If an attorney is put on notice that he has negligently sued the wrong party, some injury may have been incurred by the client. While the possible fees and unnecessary costs that may have been incurred by the client may differ from the date of each "triggering event," the possibility of a malpractice claim would be evident from each event. Yet, even Plaintiff is not arguing that Kamitomo should have notified

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8**

Westport of the potential claim prior to the ruling on summary judgment.

Moreover, the practice of law is an art, not a science. The legal system is set up to permit review of trial court decisions. Trial courts make mistakes. Judges may overlook facts, abuse their discretion, or misapply the law. Indeed, this Court has been reversed before by the Ninth Circuit, notwithstanding the fact that it was fully convinced and remains convinced that it had correctly decided the issue. As part of the practice law, attorneys must predict what judges, courts, and juries will do, and generally, the failure to accurately do so will still be within the standards of practice. It is not reasonable to expect an attorney to notify his insurance carrier every time an adverse ruling is issued by the trial judge, notwithstanding the fact that such a ruling could adversely impact the outcome of the case; especially when the attorney reasonably believes that the impact of the adverse ruling can be cured. Merely losing a motion addressed to the Court's discretion such as a motion in limine or a motion to continue–all events that can severely impact a case–surely cannot be a triggering event that would require an attorney to notify his insurance carrier, unless it is clear that the impact of the adverse ruling cannot be cured.

Every day in a trial court someone asks for more time to do something because they are not ready. These motions appeal to the court's discretion and can be won or lost for a myriad of reasons. Such motions include continuances, responding to motions, amendments to answers and complaints, designating experts, filing briefs, seeking more time to conduct discovery in order to address a factual motion, etc. Not being ready or tardy is almost per se negligent. The denial of any such motion could have a significant negative impact on litigation depending on subsequent events. If a court refuses to permit a lawyer to amend an answer or complaint, exceed the number of interrogatories permitted, continue a motion, do discovery, etc, a lawyer may reasonably believe that the client's case has been adversely affected by the attorney's conduct but that the injury can be cured. As such, it is not reasonable to believe that the word "might" in the policy

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9**

requires notice to the carrier at that time.

Motions for summary judgment granted at the trial court level or motions to amend that are denied are routinely and successfully appealed.[4]  For instance, in Washington law, as with federal law, leave to amend pleadings "shall be freely given when justice so requires." CR 15(a). "The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party. Factors that may be considered in determining whether permitting amendment would cause prejudice include undue delay, unfair surprise, and jury confusion." *Cambridge Townhomes, LLC v. Pacific Star Roofing, Inc.*, 2009 WL 1709641 *4 (June 18, 2009 Wash.). Notably, in *Cambridge*, the Washington Supreme Court concluded that the trial court erred in denying the plaintiff's motion to amend because the defendant was unable to demonstrate prejudice if the additional party had been added to the suit. *Id.*

In reviewing the pleadings presented to the trial court, the Court cannot

---

[4]In the underlying proceeding, the accident occurred on July 2, 2003. The statute of limitations would then have expired on July 2, 2006, which was prior to Vista moving for summary judgment. Thus, in order for the claim against Baltic to survive, it had to relate back to the filing of the original complaint. Under Washington law, an amendment adding or changing a party relates back if the new party (1) has received such notice of the institution of the action that it will not be prejudiced in maintaining its defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it. Additionally, inexcusable neglect may preclude relation back under CR 15(c). *Gildon v. Simon Property Group, Inc.*, 158 Wash.2d 483, 489 n.5 (2006); *see also Craig v. Lundy*, 95 Wash. App. 715, 720 (Wash. App. 1999) (holding the superior court erred in denying the plaintiffs' motion to amend their complaint under Rule 15(c) and in dismissing action).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 10

conclude that Kamitomo's position was unjustified or untenable, or that his position was clearly impossible. Finding that Kamitomo had an obligation to contact his insurance carrier after the adverse summary judgement ruling is not reasonable. From looking at the record, it appears that the trial judge announced his decision from the bench without hearing argument. His oral decision seemed to address only one of the arguments made by Kamitomo in opposition to the motion. The defendant's motion for summary judgement focused on the transfer of ownership of the facility prior to the injury. Kamitomo claimed that there were issues of fact concerning the ownership that precluded summary judgement. In addition, Kamitomo contended that there were issues of fact that the operation of the facility continued in the same manner after the sale of the assets giving rise to liability. The trial judge did not address this contention. Kamitomo had also requested additional time to take a deposition in order to address factual declarations made by the defendant. These requests are generally granted in cases such as this case. This request was not addressed by the trial court. The ruling by the trial court rested solely on the documents showing transfer of ownership.

Kamitomo sought to cure the effect of the dismissal by seeking reconsideration and leave to amend the complaint. Both of these motions appeal to the sound discretion of the court. The trial judge denied the motions using a form order that gave no analysis of the reasons therefor. Normally, in denying a motion for leave to amend a complaint, some assessment by the judge of the factors that cause the judge to deny the motion is presented.

If the motion for leave to amend was improperly denied, or time for discovery had been granted, the case would have proceeded. From a reasonable attorney's perspective, the motions seemed sound or at least not without a substantial basis. First, the parties that were to be added had actual notice of the filing of the case by service. Secondly, there was no demonstrated prejudice that would result from the amendment. The case had only been pending for eight

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~** 11

months. The amendment in part sought to substitute Des Moines Retirement Center, LLC for Des Moines Vista Assisted Living, Inc. Both entities were created by the same parties. The only factor that may militate against the motion was the failure to move at an earlier time. The trial court order was silent on the reason or reasons for denying the motion. The timing issue was not addressed. While the trial judge sanctioned Kamitomo for not better investigating the public sale and licensing records, the judge did not address on the record the evidence concerning the operation of the facility. In like manner, the trial judge did not address the request for time to take a deposition to address the affidavits filed by Vista.

At that point in the proceedings, Kamitomo appeared to believe that the trial judge was wrong on both legal and procedural grounds and filed an appeal. A reasonable attorney could conclude the same. Courts of Appeal apply standards of review of trial court discretionary decisions that produce varying and sometimes unpredictable results. In this case, the Court of Appeals had to guess at the trial judge's reasons because the trial judge did not give any. Before the Court of Appeals decision, a reasonable lawyer could believe that the trial judge's decisions would be reversed. If reversed, the case would continue.[5]

In this case, the Court must decide whether a lawyer that loses an important discretionary ruling, which he believes can be cured, is required by his insurance policy to notify the carrier of the loss. The Court thinks not.

Rather, the Court finds that a reasonable interpretation of the term "might"

---

[5]If Kamitomo had been successful in convincing the Court of Appeals that the trial court abused its discretion on its ruling on the motion to amend, failed to recognize issues of fact, or should have permitted discovery, the case would have been remanded. More likely than not there would not be a potential malpractice claim. Yet, under Plaintiff's position, under these facts, Kamitomo should have notified them of the potential (yet ultimately non-existent) claim.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 12

as used in the Westport policy is that it becomes reasonably foreseeable that a claim might be brought when there are no longer any meaningful avenues open for curing the adverse ruling available to the client.[6] Indeed, this appears to be how Kamitomo interpreted the policy, because as soon as it became clear that there were no more legal avenues to pursue Naidu's claim, Kamitomo notified his insurance carrier.

### E. Whether Westport is Required to Establish Prejudice

Defendants urge this Court to find that an insurer must demonstrate prejudice as the result of a late notice when relying upon an exclusionary clause under a claims-made policy. Defendants indicates that this is a issue of first impression in Washington.

Washington courts have held that unlike an occurrence policy, a claims-made policy typically does not require a showing of prejudice to support a denial of coverage when the claim is submitted after the policy has terminated. *Safeco Title Ins. v. Gannon*, 54 Wash. App. 330, 336-37 (1989). Defendants argue that this case is distinguishable. The Court agrees.

---

[6]Plaintiffs argue that at the minimum, attorneys should be held to the same limitations as clients who bring claims for legal malpractice where the entering of a judgment is the triggering event for the statute of limitations to begin to accrue. *See Richardson v. Denend*, 59 Wash. App. 92, 95 (1990). The statute of limitations for a legal malpractice claim is three years, whereas the exclusionary clause sets a one year period for notification of claims. Moreover, the statute of limitations is statutory provision set by the Washington legislature, whereas the one-period notification period is a contract provision presumably negotiated at an arms-length between an insurance provider and an insured. Given these important distinctions, the Court does not believe the case law interpreting the statute of limitations period for legal malpractice claims is helpful to the analysis.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13**

In *Safeco*, the insured notified his insurance carrier of a claim two years after the expiration of the policy period. *Id.* at 333. The policy, a claims-made policy, initially provided coverage beginning in May, 1979, and was renewed annually until 1983, at which time the policy terminated. *Id.* at 332. The court recognized that the application of the notice/prejudice rule, which requires carriers, in order to exclude coverage because of an insured's failure to comply with a policy's notice requirement, to show actual prejudice resulting from the lack of notice, generally applies to the typical notice provision in an occurrence policy. *Id.* at 336. It also recognized that this rule was developed in an attempt to avoid the perceived unfairness of denying coverage for failure to comply with a notice provision if the insurer was not prejudiced by that failure. *Id.* Specifically, the court noted that "[b]ecause notice provisions exist to prevent insurers from being prejudiced by their insureds' dilatory filing of claims, to allow the denial of coverage where untimely notice of a claim does not prejudice the insurer would be to elevate form over substance," *Id.*

On the other hand, the court observed that:

> with claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period . . . would negate the inherent difference between the two contract types. Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made or discovery policies are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches. If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained.

*Id.*, quoting *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512, 515-16 (Fla. 1983) (emphasis in original).

In adopting this reasoning, the Washington court assumed that if the insured in *Safeco* had notified his insurance company that a claim had been asserted against him in 1983, when the policy was in effect, the insurance company would have been legally obligated to pay. However, this is not the case here. Rather,

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14**

Kamitomo, the insured, notified Westport, his insurance carrier, of a potential claim that had been asserted against him when the 2007-08 policy was in effect, but Westport took the position that it was not legally obligated to to pay because of an exclusionary clause.  Thus, Westport is relying on both its reporting requirement and its exclusionary clause to deny coverage under the 2006-07 policy and the 2007-08 policy.  Had the Washington court been faced with this situation, it likely would have concluded that the balance of fairness had been tipped disproportionally against the insured and it would impose the notice-prejudice rule to this situation at bar.  Where there is continual coverage in a claim-made policy, it would be fundamentally unfair for the insurer to rely on a  reporting requirement and the corresponding failure to give notice to deny coverage, but rely on an exclusionary provision to deny coverage when the notice was given.  As such, the Court concludes that in order to deny coverage in this instance for failure to provide notice, where the attorney has continually obtained coverage for over a ten year period, and where the insurer is invoking an exclusionary provision to deny coverage after the insured as given notice as required by the policy, the insurer must show actual prejudice resulting from the lack of notice before it can deny coverage for failing to give timely notice.  Here, Plaintiff has not shown how it was prejudiced by the January, 2008 notice.

**F.    Plaintiff's Motion for Summary Judgment**

Plaintiff also filed a Motion for Summary Judgment, making the same arguments in opposition to Defendant's Motion for Summary Judgment.  For the reasons stated above, the Court denies Plaintiff's Motion for Summary Judgment, in part.  The Court reserves ruling on Plaintiff's argument that Defendants' bad faith claims must be dismissed.

///

**G.    Conclusion**

In conclusion, the Court finds that the term "might" as used in the Westport

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15**

policy is ambiguous when applied in this context. As such, the Court finds that the exclusionary clause does not apply to preclude coverage.

Additionally, the Court interprets the term "might" in this context to mean when a reasonable attorney would believe that there are no longer any meaningful avenues of relief to pursue. In this case, this occurred at the earliest in January, 2008, when Kamitomo did not appeal the Court of Appeals decision to the Washington Supreme Court. Because Kamitomo gave written notice to Westport of the potential claim during the coverage period, Westport is obligated under the policy to provide coverage, if and when Naidu asserts a claim for legal malpractice against Kamitomo and The Markham Group.

In the alternative, the Court concludes that in this particular case, in order to deny coverage, Westport must show that it was prejudiced by the failure to provide notice in 2007 or by the 2008 notice of the potential malpractice claim, and Westport has failed to do so.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment (Ct. Rec. 24) is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (Ct. Rec. 63) is **DENIED**, in part.

3. The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiff with respect to Plaintiff's request for declaratory judgment.

///
///
///
///

**IT IS SO ORDERED.** The District Court Executive is directed to enter this

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 16

Order and to provide copies to counsel.

**DATED** this 26th day of August, 2009.

*s/Robert H. Whaley*

ROBERT H. WHALEY
Senior United States District Court

Q:\CIVIL\2008\Westport Insurance\grantsj.wpd

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 17